UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIZABETH ALFARANO,

     Plaintiff,

v.                                       Case No. 8:19-cv-2022-T-30CPT

ANDREW M. SAUL,
Commissioner of Social Security,

     Defendant.
_____/

**<u>REPORT AND RECOMMENDATION</u>**

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Disability Insurance Benefits (DIB). For the reasons discussed below, I respectfully recommend that the Commissioner's decision be affirmed.

I.

The Plaintiff was born in 1963, is high school educated, has an associate's degree in visual communication and graphic design, and has past relevant work experience as an office assistant. (R. 17, 64). On March 22, 2017, the Plaintiff applied for DIB, claiming disability as of January 22, 2009, due to severe depression and social anxiety disorder. (R. 10, 87-88, 99-100). The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. (R. 97-98, 113-114).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on May 9, 2018. (R. 55-86). The Plaintiff was represented at that hearing and testified on her own behalf. (R. 61-80, 85). A vocational expert (VE) also testified. (R. 65-67, 80-85).

In a decision dated October 12, 2018, the ALJ found that the Plaintiff: (1) met the insured status requirements through September 30, 2016, and had not engaged in substantial gainful activity since her alleged onset date of January 22, 2009; (2) had the severe impairments of depression, anxiety, and abdominal pain; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to engage in light work, except that she was limited to simple, routine, and repetitive tasks, as well as occasional contact with supervisors, coworkers, and the general public; and (5) was unable to perform her past relevant work as an office assistant but, based on the VE's testimony, was able to engage in other occupations that exist in significant numbers in the national economy—namely, laundry folder, photo copy scanner, and produce sorter. (R. 10-19). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 18).

The Appeals Council denied the Plaintiff's request for review. (R. 1-6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

## II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[1] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[2] Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)); 20 C.F.R. § 404.1520(a)(4). While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner

---

[1] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[2] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

carries that burden, the claimant must then prove that she cannot perform the work identified by the Commissioner. *Id.* In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating whether substantial evidence supports the Commissioner's decision, the Court may not decide the facts anew, make credibility determinations, or re-weigh the evidence. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 860 (11th Cir. 2019) (per curiam) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019) (per curiam). "[W]hile the court reviews the Commissioner's decision with deference to [his] factual findings, no such deference is given to [his] legal conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citations omitted).

4

III.

The Plaintiff asserts five arguments on appeal: (1) the ALJ erred in finding that the Plaintiff had no severe physical impairments other than abdominal pain, as well as in failing to assess the Plaintiff's additional physical limitations as part of his RFC determination and in the hypothetical questions he posed to the VE; (2) the ALJ erred in not taking into account the opinions of a state agency psychological consultant, James Brown, Ph.D., and a licensed clinical social worker, William Vanderstine, in evaluating the Plaintiff's mental impairments; (3) the ALJ failed to properly apply the required Psychiatric Review Technique (PRT) in analyzing the Plaintiff's mental conditions; (4) the ALJ erred in failing to consider the Plaintiff's inability to perform full-time work; and (5) the ALJ was not constitutionally appointed at the time of the hearing.  After a thorough review of the record and the parties' submissions, I find the Plaintiff's arguments to be without merit.

A.

The Plaintiff's first contention is three-fold, implicating the ALJ's findings as to the severity of her physical impairments at step two, the ALJ's subsequent RFC assessment at step four, and his reliance on the VE's testimony at step five.  Each of these issues is addressed in turn below.

At step two of the sequential evaluation process, the ALJ must gauge whether the claimant has a medically determinable impairment (or combination of impairments) that is severe.  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment is considered severe if it significantly limits a claimant's physical or mental abilities to

engage in basic work activities.  20 C.F.R. § 404.1520(c); *Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987) (per curiam).  The Eleventh Circuit has made clear, however, that this analysis is merely a "threshold inquiry," under which only "the most trivial impairments [are] to be rejected."  *Schink*, 935 F.3d at 1265 (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)).

If an ALJ finds at step two "that an applicant does not have a 'severe' impairment or combination of impairments, he should conclude that there is no disability." *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950 (11th Cir. 2014) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)(ii).  If, on the other hand, the ALJ determines that a claimant has even one severe impairment, the step two requirement is satisfied and he must proceed to step three of the sequential evaluation process.  *Burgos v. Acting Comm'r of Soc. Sec.*, 705 F. App'x 794, 803 (11th Cir. 2017) (per curiam) ("Step two is satisfied when the claimant has any severe impairment."); *Tuggerson-Brown*, 572 F. App'x at 951 ("To proceed to step three of the evaluation process, an ALJ need only conclude that an applicant ha[s] 'at least one' severe impairment.") (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).  Accordingly, "there is no need for an ALJ to identify every severe impairment at step two." *Id*.

In this case, the ALJ determined at step two that the Plaintiff suffered from three severe impairments—depression, anxiety, and abdominal pain.  (R. 13).  The fact that the ALJ found at least one severe impairment is fatal to the Plaintiff's step two challenge.  *Tuggerson-Brown*, 572 F. App'x at 951 ("[E]ven assuming that [the

Plaintiff] is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below.").

Even were that not the case, an ALJ's "failure to find additional severe impairments [at step two constitutes] harmless error as long as the ALJ considers all of the claimant's impairments (severe and non-severe) in combination throughout the rest of the sequential evaluation process." *Venezia v. Comm'r of Soc. Sec.*, 2018 WL 2075852, at *2 (M.D. Fla. Apr. 17, 2018) (citing *Freeman v. Comm'r, Soc. Sec. Admin.*, 593 F. App'x 911, 914-915 (11th Cir. 2014); *Tuggerson-Brown*, 572 F. App'x at 951-52)), *report and recommendation adopted*, 2018 WL 2059983 (M.D. Fla. May 3, 2018). Recognizing as much, the Plaintiff pivots and asserts that the ALJ erred by not including all of her physical impairments (in addition to her abdominal pain) in his RFC determination at step four and in the hypothetical questions he asked the VE at step five. (Doc. 31 at 12-16). This argument is likewise unpersuasive.

As noted above, at step four of the sequential evaluation process the ALJ must evaluate whether a claimant has the RFC to perform her past relevant work. "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by [her] impairments." *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1545(a)). In rendering his RFC findings, the ALJ must consider "'all the relevant medical and other evidence' in the case." *Id.* (citing 20 C.F.R. § 404.1520(e)). Once made, the ALJ's RFC findings are used not only to determine whether a claimant "can return to her past relevant work under" step four, but also to assess whether she "can

7

adjust to other work under" step five. *Id.*; *see also Tuggerson-Brown*, 572 F. App'x at 951 ("At the fifth step, the [ALJ] considers the same RFC assessment and other information to see if the applicant can adjust to other work in light of her 'impairment(s).'") (citations omitted).

In making his step five finding, an ALJ may rely on the testimony of a VE. *Phillips*, 357 F.3d at 1239-40. To do so, the ALJ "pose[s] hypothetical question(s) to the [VE] to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Id.* at 1240. The hypothetical questions the ALJ employs must include all of the claimant's functional limitations. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam). The ALJ, however, need not include in his hypothetical questions "each and every symptom of the claimant," *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or medical findings "the ALJ . . . properly rejected as unsupported," *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam).

To buttress her contention that the ALJ did not consider all of her other physical impairments (in addition to abdominal pain) at steps four and five, the Plaintiff cites the physical RFC assessment of a state agency physician, Dr. Michael Slattery, who opined that the Plaintiff suffers from gastritis, migraines, hyperlipidemia, spine disorders, and repeated complications of hematological disorders. (R. 105, 107-109). The Plaintiff also points to multiple other healthcare providers who found that she had various conditions besides abdominal pain, including migraines (R. 468, 471),

anemia (R. 375, 427), lower back pain (R. 471), back pain and spasms (R. 367), straightening of the normal cervical lordosis and multilevel degenerative disc disease (R. 443), and cervical arthritis and a strained neck muscle (R. 430, 432, 435).  The Commissioner counters that the Plaintiff fails to show that any of these impairments causes additional functional limitations.  (Doc. 31 at 17-21).  I agree.

While it is true that the Plaintiff has been found to have the above maladies, merely being diagnosed with a condition does not automatically equate to a work-related limitation that an ALJ must include in his RFC determination or in his hypothetical questions to the VE.  *Moore*, 405 F.3d at 1213 n.6 (noting that "the mere existence of . . . impairments does not reveal the extent to which they limit [a claimant's] ability to work"); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (explaining that an impairment's severity "must be measured in terms of its effect upon ability to work"); *Sheerin v. Saul*, 2020 WL 1430696, at *7 (M.D. Fla. Mar. 24, 2020) (same).  Rather, the Plaintiff "must show the effect of the [claimed] impairment[s] on her ability to work."  *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (per curiam); *see also Carter v. Comm'r of Soc. Sec.*, 411 F. App'x 295, 299 (11th Cir. 2011) (per curiam).

The Plaintiff has not done so here.  Instead, she essentially recites the above conditions and then, without any meaningful discussion as to the work-related limitations these impairments purportedly cause her, she summarily asserts that the ALJ erred.  (Doc. 31 at 16).  Such a conclusory contention is inadequate.  *See* 20 C.F.R. § 404.1512(a); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 859 (11th Cir. 2013)

(per curiam) (finding that claimant failed to show what additional limitations her condition caused beyond the limitations manifested by her other severe impairments).[3]

In addition to this deficiency, I do not agree with the Plaintiff's contention that the ALJ did not sufficiently address her physical condition at step four.  (R. 14-16).  By way of example, the ALJ expressly considered Dr. Slattery's opinion, in which—as noted above—Dr. Slattery found that the Plaintiff suffered from a number of ailments, including gastritis, migraines, hyperlipidemia, spine disorders, and repeated complications of hematological disorders.  (R. 16, 105, 107-109).  The Plaintiff, however, fails to acknowledge that the ALJ actually imposed a more restrictive exertional limitation than the one Dr. Slattery recommended.  (R. 16).

In addition to his assessment of Dr. Slattery's opinion, the ALJ cited in his step four analysis other medical exhibits in the record that collectively reference many of the physical impairments—such as migraines and lower back pain—that the Plaintiff now claims the ALJ failed to address.  (R. 15, 468, 471); *see also Ray v. Saul*, 2020 WL 2300707, at *7 (M.D. Fla. May 7, 2020) (rejecting plaintiff's argument that ALJ failed to consider primary care doctor's records even though not listed by name because the

---

[3] The Plaintiff's failure to demonstrate that her alleged additional physical impairments affected her ability to work is not surprising.  As noted above, the Plaintiff applied for DIB on the basis of two mental conditions (i.e., severe depression and social anxiety disorder).  (R. 87-88, 99-100).  Further, the only new medical condition noted in her disability determination on reconsideration were gastrointestinal ailments for which she was taking medication.  (R. 100).  In addition, at the hearing, the Plaintiff's representative agreed with the ALJ that this was a "mental-only" or "non-exertional" case.  (R. 61).  The Plaintiff's representative, in fact, confirmed that the Plaintiff's theory of disability rested on her alleged mental impairments, along with the migraines she experienced.  (R. 59-60, 75-77).

doctor's records were cited and referred to often in the decision).  And, the ALJ specifically identified records covering the Plaintiff's (1) spine disorders and lower back pain (R. 15-16, 105, 468, 471); multi-level degenerative disc disease (R. 16, 108); and cervical arthritis and neck problems (R. 15, 430, 432, 435).  This includes information not only from the Plaintiff's own providers but from Dr. Slattery as well.

Furthermore, the ALJ observed as part of his step four inquiry that the Plaintiff's "numerous physical examinations were normal," including that she was found to have a "normal gait and station; normal tone and motor strength as well as movement in all extremities; normal spine curvature[;] and [intact] sensory."  (R. 15, 468, 471); *see also* (R. 15, 429, 432, 435).  The ALJ also commented that the treatment the Plaintiff received for her physical impairments had been "quite sporadic[ ]" and "fairly conservative."  (R. 16).

Contrary to the Plaintiff's assertion, the ALJ was not required "to list all of the plaintiff's diagnoses, especially since . . . they [did] not necessarily reflect functional limitations."  *Ray*, 2020 WL 2300707, at *4; *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the court] to conclude that [the ALJ] considered [a claimant's] medical condition as a whole.'") (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

In light of the above, I find that the record sufficiently demonstrates that the ALJ properly assessed the Plaintiff's physical impairments, even those not specifically

found to be severe, in reaching his conclusion that the Plaintiff was not disabled.  That the ALJ may not have included in his hypothetical questions "each and every symptom" caused by the Plaintiff's impairments, *Ingram*, 496 F.3d at 1270, or those medical findings he "properly rejected as unsupported," *Crawford*, 363 F.3d at 1161, is not grounds for reversal.  As a result, I find that the Plaintiff's first claim of error fails.

B.

The Plaintiff's second claim of error is that the ALJ failed to consider two opinions regarding her mental impairments—the first from Dr. Brown, a state agency psychological consultant, and the second from William Vanderstine, a licensed clinical social worker.  (Doc. 31 at 21-25).  After careful review, I find that the Plaintiff's second claim of error does not survive scrutiny.

I begin with the Plaintiff's contention regarding Dr. Brown's opinion.  That opinion was part of a separate application by the Plaintiff for SSI benefits, wherein it was determined that she was disabled as of March 22, 2017, roughly six months after her date last insured for purposes of DIB (i.e., September 30, 2016).  *Id.* at 21-22. According to the Plaintiff, Dr. Brown's assessment "provided the basis for [the] disability adjudicator/examiner" in the SSI matter "to find that [the Plaintiff could not] sustain concentration, persistence, or pace or handle stressors of full-time work." *Id.* at 21.  As a result, the Plaintiff maintains that the Commissioner should have included Dr. Brown's opinion as part of the record here.  *Id.* at 21-22.

The problem with the Plaintiff's argument, as she acknowledges, is that Dr. Brown's opinion "was not contained in the [administrative] exhibits or transcript of

this case." *Id.* at 22.  As such, it cannot be said—as the Plaintiff seems to suggest—that the ALJ somehow "failed to consider" evidence that was not before him.

Effectively conceding the matter, the Plaintiff's appears to argue that the case should now be remanded to the Commissioner so that he may evaluate this purportedly new evidence.  Remands for such a purpose are governed by sentence six of 42 U.S.C. § 405(g).  *Ingram*, 496 F.3d at 1267 ("[s]entence six of section 405(g) provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court").  That provision states, in pertinent part:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g).

To establish a basis for a sentence six remand, a plaintiff must demonstrate that (1) there is new, noncumulative evidence; (2) the new evidence is "material"—that is, the evidence is chronologically relevant and probative, such that a reasonable possibility exists that it would change the administrative result; and (3) good cause exists for the failure to submit the evidence at the administrative level.  *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 821 (11th Cir. 2015) (citation omitted).

Here, the Plaintiff does not reference the requirements for a sentence six remand, much less demonstrate that Dr. Brown's opinion meets these requirements.  As a result, this issue should be deemed waived.  *McLain v. Comm'r, Soc. Sec. Admin.*,

676 F. App'x 935, 940 (11th Cir. 2017) (per curiam) (explaining that a plaintiff's failure to seek a sentence six remand waives that argument) (citing *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004)).

Presumably in an effort to avoid such a waiver, the Plaintiff points to the fact that she filed a motion to supplement the record in this case with the exhibit file from her SSI matter (which includes Dr. Brown's opinion) after the Commissioner failed to include these materials.  (Doc. 31 at 21 & n.2; Doc. 23; Doc. 23-1; Doc. 23-2).  The Plaintiff's reliance on her prior motion is misplaced.  The Court denied that motion in part because the Plaintiff failed to satisfy the criteria for a sentence six remand.  In particular, the Court stated:

> The Plaintiff seeks to supplement the record with her [SSI] exhibit file and award, which was approved seven months following her date last insured.  The Plaintiff, however, presents no valid basis to supplement the record on appeal with an SSI award notice rendered nearly a year and a half before the ALJ's decision at issue on this appeal (which denied her claim for DIB), and seven months after her date last insured for DIB.  *Nor does the Plaintiff provide any reason to believe that the SSI award letter is new, material, or relevant evidence, such that remand is warranted under sentence six of 42 U.S.C. 405(g).*

(Doc. 25) (emphasis added).  The Plaintiff presents no basis in her memorandum for the Court to revisit this ruling.

The Plaintiff's contention with respect to Vanderstine's opinion evidence fares no better.  (R. 408-410).  As the Plaintiff notes, the ALJ expressly considered in his decision a May 2018 opinion from Vanderstine but did not explicitly discuss an earlier opinion of Vanderstine's from April 2017.  (Doc. 31 at 21-25).  The Plaintiff claims

that the ALJ's failure to evaluate Vanderstine's prior opinion was error, particularly because it was more detailed than the May 2018 opinion that the ALJ rejected. *Id.* at 23. This contention fails.

In reviewing an individual's disability claim, "[a]n ALJ must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)).[4] The Regulations governing an ALJ's evaluation of opinion evidence offered by medical sources draw a distinction between "acceptable medical sources" and "other sources." Social Security Ruling (SSR) 06-03p, 2006 WL 2329939, at *1-6 (S.S.A. Aug. 9, 2006) (explaining how the SSA assesses opinions from different types of evidentiary sources).[5] "Acceptable medical sources" include licensed physicians and licensed or certified psychologists, while "other sources" include physician assistants, nurse practitioners, and—of relevance here—licensed clinical social workers like Vanderstine. *Id.* at *1-2; *Anteau v. Comm'r of Soc. Sec.*, 708 F. App'x 611, 613 (11th Cir. 2017) (per curiam) (commenting that "other sources" include licensed clinical social workers).

---

[4] Although this regulation was amended effective March 27, 2017, the new regulation only applies to applications filed on or after that date. 20 C.F.R. § 404.1520c. Because the Plaintiff's application was filed on March 22, 2017, the older version of the regulation is controlling here.

[5] SSRs "are agency rulings published under the Commissioner's authority and are binding on all components of the Administration." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (per curiam) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)). While they do not bind the courts, they are generally afforded deference. *Id.* (citation omitted).

Under the Regulations, "only evidence from 'acceptable medical sources' can establish the existence of a medically determinable impairment, and only 'acceptable medical sources' can give medical opinions or be considered treating sources,[6] whose medical opinions may be entitled to controlling weight." *Anteau,* 708 F. App'x at 613 (citing SSR 06-03p, 2006 WL 2329939, at *2); *see also Graham v. Berryhill*, 2018 WL 4520342, at *4 (M.D. Fla. Sept. 21, 2018) (citing SSR 06-03p, 2006 WL 2329939, at *1). When an opinion is offered by an "acceptable medical source," an ALJ "must state with particularity" the weight accorded that opinion and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (citation omitted).

The opinions of "other sources," on the other hand, "are not medical opinions . . . entitled to any special significance or consideration." *Lange v. Comm'r of Soc. Sec.*, 2019 WL 643714, at *4 (M.D. Fla. Feb. 15, 2019) (citations omitted). And, while they may bear on the severity or functional limitations of a claimant's conditions, such opinions "cannot establish the existence of a medically determinable impairment," *Anteau*, 708 F. App'x at 613 (citation omitted). As a result, in assessing the opinions of "other sources," an ALJ need only "generally explain the weight given to [such] opinions . . . or 'otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the

---

[6] "A treating source is a physician, psychologist, or other acceptable medical source who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant. . . ." *Bradley v. Comm'r of Soc. Sec.*, 2016 WL 877782, at *3 (M.D. Fla. Mar. 8, 2016) (citation omitted).

adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.'" *Graham*, 2018 WL 4520342, at *4 (quoting SSR 06-03p, 2006 WL 2329939, at *6).

As the Regulations and the case law make clear, Vanderstine is an "other source," whose opinion was not entitled to any special significance or consideration. *See Ryan v. Colvin*, 2013 WL 12161866, at *4 (M.D. Fla. Sept. 19, 2013) ("While 'other sources' can provide insight into the severity of a claimant's impairments and how the impairments affect [the claimant's] ability to function, the Commission[er] is not required to accept the conclusion from a non-acceptable medical source and may accord such weight as he deems appropriate based upon the medical evidence of record."). And, although it is true that the ALJ did not explicitly state the weight afforded to Vanderstine's April 2017 opinion, there was no requirement that he do so. *See Figuera v. Comm'r of Soc. Sec.*, 2020 WL 4185793, at *2 (11th Cir. July 21, 2020) (per curiam) (observing that an ALJ "'may' consider evidence from other sources to show the severity of an individual's impairments and how those impairments affect the individual's ability to function, but he is not required to do so.") (citing SSR 06-03p, 2006 WL 2329939).[7]

Moreover, to be eligible for DIB under the Act, a claimant must "demonstrate[ ] disability on or before the last date for which she [was] insured."

---

[7] In *Figuera*, the Eleventh Circuit noted that SSR 06-03p "was rescinded by 82 Fed. Reg. 15,263 (Mar. 27, 2017)." *Id.* at *2 n.3. The federal register notice, however, states that the rescission of SSR 06-03p applies to claims filed on or after March 27, 2017, five days after the Plaintiff filed her DIB claim in this case.

*Moore*, 405 F.3d at 1211; *see also McClain v. Comm'r, Soc. Sec. Admin.*, 676 F. App'x 935, 937 (11th Cir. 2017) (per curiam) ("If a claimant becomes disabled after losing insured status, h[er] DIB claim will be denied despite a disability."); *Rodriguez v. Colvin*, 2016 WL 825380, at *3 (M.D. Fla. Feb. 9, 2016) (finding plaintiff's reliance on evidence after date last insured in support of DIB claim "is misplaced"), *report and recommendation adopted*, 2016 WL 816610 (Mar. 2, 2016). Here, Vanderstine's April 2017 opinion was provided seven months *after* the Plaintiff's date last insured and it does not expressly state that it applies retrospectively. As a result, it has little, if any, relevance to the issue of the Plaintiff's DIB eligibility. *Hughes v. Comm'r of Soc. Sec. Admin.*, 486 F. App'x 11, 14 (11th Cir. 2012) (per curiam) (noting that records of plaintiff's mental and physical condition after the date of last insured "were not particularly relevant to whether [plaintiff] was disabled for purposes of DIB"); *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x, 830, 883 (11th Cir. 2011) (per curiam) (concluding that the ALJ correctly found an opinion "irrelevant because it did not specify that it pertained to [plaintiff's] condition during the disability period."); *Lingenfelser v. Comm'r of Soc. Sec.*, 2017 WL 4286546, at *7 (M.D. Fla. Sept. 27, 2017) ("Outside the context of an explicitly *retrospective* diagnoses, courts in this Circuit have noted repeatedly that medical records post-dating the date of last insured are of little relevance to the ALJ's task of determining disability.") (emphasis in original) (collecting cases); *Jones v. Colvin*, 2015 WL 9694507, at *6 (M.D. Fla. Dec. 15, 2015) ("[O]pinions . . . rendered after [p]laintiff's date of last insured are of little relevance to the ALJ's disability

determination and [p]laintiff appears to recognize as much."), *report and recommendation adopted*, 2016 WL 111628 (M.D. Fla. Jan. 11, 2016).

The fact that—as the Plaintiff notes—Vanderstine's April 2017 opinion contains such vague comments as the Plaintiff had "untreated depression for many years" and suffered from "extended untreated clinical depression" does not alter my conclusion.  These ambiguous references do not lead to the necessary conclusion that Vanderstine's opinion was intended to be retrospective.  *See Goff ex rel. Goff v. Comm'r of Soc. Sec.*, 253 F. App'x 918, 921 (11th Cir. 2007) (per curiam) (finding that substantial evidence supported ALJ's finding that a doctor's "opinion letter did not refer to the time period before" the date last insured, where the letter was ambiguous as to whether it applied to such time period and other medical evidence demonstrated a lack of disability prior to that time.).

Indeed, as the ALJ observed in his decision, the "majority of the medical evidence of record occurred after the date the [Plaintiff] was last insured for disability benefits." (R. 15).  In so noting, the ALJ listed, among other exhibits, Vanderstine April 2017 opinion.  *Id.* (citing, *inter alia*, R. 408-410).  The ALJ's citation to such evidence, along with his observation that it fell outside the relevant period, indicates that he at least considered it but found that it did not change his DIB determination. *Cf. Levie v. Berryhill*, 757 F. App'x 834, 836-37 (11th Cir. 2018) (per curiam) (rejecting argument ALJ failed to consider social worker's opinion in treatment notes taken years before the plaintiff's alleged onset date where ALJ referred to the social worker's

treatment of the claimant and cited the exhibits containing the social worker's treatment notes).

Moreover, the ALJ did explicitly weigh and reject Vanderstine's May 2018 opinion, which contained some similar conclusions to those he had opined a year earlier. In particular, the ALJ stated with respect to Vanderstine's May 2018 assessment:

> Vanderstine . . . submitted an opinion in May 2018 wherein he opined that the [Plaintiff's] severe depression and profound anxiety paralyzes her ability to accomplish everyday tasks, including work (Ex. 14). I afford this opinion little weight as it is conclusory, does not define how the [Plaintiff] is limited functionally, and provides insufficient rationale. Moreover, this opinion is inconsistent with other . . . conservative treatment the [Plaintiff] received during the period at issue along with fairly normal mental status examination results. Moreover, this opinion is dated long after the [Plaintiff's] date last insured and does not specify that the opinion applies to the period of time at issue.

(R. 16) (citing [R. 515-517]).

Additionally, in conjunction with his evaluation of Vanderstine's May 2018 opinion, the ALJ considered other relevant evidence of record pertaining to the Plaintiff's mental conditions. In particular, the ALJ noted that the Plaintiff's treatment for mental impairments at a mental health provider (Cornerstone Psychiatric Services) from December 2015 to September 2016 was fairly sporadic, conservative, and mostly normal. (R. 15, 388, 391, 393, 395). The ALJ also reached the same conclusion regarding the mental health treatment the Plaintiff received from her general practitioner, Dr. Trent Mascola, in November and December 2015. (R. 15, 467, 471). And, the ALJ explicitly noted in rendering his RFC determination that it was

"supported by the objective medical evidence," including "the opinions of the state agency physician and psychologists." (R. 16).

Other than her assertion that the ALJ should have also expressly considered Vanderstine's earlier opinion, the Plaintiff points to nothing in that April 2017 opinion that indicates she is more limited than the ALJ assessed. By my reading of Vanderstine's opinions, he found the Plaintiff to be socially impaired, as well as limited by her memory and concentration problems. (R. 408-410). Vanderstine's assessment is not inconsistent with the ALJ's finding that the Plaintiff should be restricted to simple, routine, and repetitive tasks, as well as occasional contact with supervisors, coworkers, and the general public. Thus, to the extent the ALJ erred at all in his evaluation of Vanderstine's April 2017 opinion, any such error was harmless. *See Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (per curiam) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (stating that an error is harmless when it does not prejudice a claimant)); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (finding harmless error where the ALJ failed to explicitly state what weight he afforded to a number of physicians' medical opinions where none of those opinions directly contradicted the ALJ's findings).

## C.

The Plaintiff's third claim of error is that the ALJ did not properly utilize the regulatorily required PRT in evaluating her mental impairments. This argument is also unpersuasive.

It is well established that when a claimant presents a "colorable" claim of a mental impairment, the ALJ must apply the PRT mandated by the Regulations. *Moore*, 405 F.3d at 1213-14; 20 C.F.R. § 404.1520a.  This technique requires that the ALJ assess the Plaintiff's mental impairment using the following four broad functional areas (known as the Paragraph B criteria): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).

The Regulations also require that the ALJ provide a specific explanation for his opinion, including the degree of limitation found in the four functional areas listed above.  20 C.F.R. §§ 404.1520a(c)(4), (e)(4).  The ALJ must then incorporate the results of the PRT into his findings and conclusions.  *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (per curiam).

The PRT, however, is separate from the ALJ's step four RFC determination, which, as previously discussed, requires an assessment of the claimant's maximum ability to do work despite her impairments, both severe and non-severe.  *Schink*, 935 F.3d at 1268-69 (noting that "[c]onsideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC").  The ALJ's RFC analysis therefore represents a more detailed evaluation of the claimant's ability to function. *Winschel*, 631 F.3d at 1180; *see also* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (observing that criteria used to rate severity of mental impairments at step two do not amount to an RFC assessment, and that a "more detailed" evaluation is mandated at

steps four and five, requiring "itemizing various functions contained in the broad" functional areas).

In this case, as noted above, the ALJ found at step two of his analysis that the Plaintiff had the severe mental impairments of depression and anxiety. (R. 13). The ALJ then considered the Paragraph B criteria at step three and found that these conditions caused her to have moderate limitations in all functional domains. *Id*. Based on these findings, the ALJ determined that the Plaintiff's depression and anxiety did not cause at least two "marked" limitations or one "extreme" limitation, and that they therefore were not sufficient to meet or equal the severity of one of the listed impairments. (R. 13-14).

The Plaintiff maintains that the ALJ's analysis of the four functional areas was not as detailed as it should have been. She has a point. Instead of discussing the Plaintiff's mental health record in connection with each area, the ALJ engaged in a broad discussion of the evidence. That said, while I agree with the Plaintiff that the ALJ's analysis of the Paragraph B criteria could have been more robust, I find that the ALJ did all that the Regulations required him to do—he rated the Plaintiff's degree of limitation in the four functional areas. 20 C.F.R. §§ 404.1520a(c)(4), (e)(4). Thus, notwithstanding the Plaintiff's urging to the contrary, I find no reversible error in the ALJ's failure to conduct the type of full or individualized analysis as the Plaintiff maintains he should have performed.

Moreover, the ALJ specifically noted that his Paragraph B findings were not a substitute for the more detailed mental RFC determination at step four (R. 14), and

his subsequent discussion at that step contains such an assessment that more fully describes the evidence supporting his findings. Indeed, the ALJ's RFC evaluation acknowledged the Plaintiff's testimony that her depression followed the birth of her son in 2009, and that she has trouble concentrating, forgets things she hears, misses deadlines, feels anxious, cries often, has trouble sleeping, fights with her husband, has problems being in public, dealing with stress, and following instructions. (R. 14-15, 68-75).

He then found, however, that the Plaintiff's claims regarding the intensity, persistence, and limiting impacts of her symptoms were not fully consistent with the medical and other record evidence, including the Plaintiff's mental health treatment with Cornerstone Psychiatric Services and Dr. Mascola. (R. 15, 388, 391, 393, 395, 467, 471). The ALJ concluded his findings regarding the Plaintiff's mental health, stating:

> In sum, the [Plaintiff] received fairly conservative treatment for her mental health conditions and mental status examinations have been mostly normal. Additionally, the evidence shows fairly sporadic, conservative treatment for her mental health conditions prior to the date the [Plaintiff] was last insured for benefits. *Nevertheless, I considered the [Plaintiff's] severe mental [health] impairments and limited her to performing simple, routine, and repetitive tasks and having occasional contact with supervisors, coworkers, and the general public.*

(R. 16) (emphasis added).

The ALJ's RFC finding limiting the Plaintiff to performing simple, routine, and repetitive tasks and allowing only occasional contact with supervisors, coworkers, and the general public sufficiently accounted for her mental impairments. *Ybarra v. Comm'r*

*of Soc. Sec.*, 658 F. Appx. 538, 542 (11th Cir. 2016) (per curiam) (finding limitation to "'short, simple instructions' . . . 'with only occasional contact with co-workers and the general public on routine matters'" properly accounted for moderate limitations in social functioning and the capacity to maintain concentration, pace, and persistence); *Hewitt v. Saul*, 2020 WL 1181953, at *5 (M.D. Fla. Mar. 12, 2020) ("To account for [p]laintiff's moderate mental impairments in his RFC assessment, the ALJ limited [p]laintiff to understand, remember, carry out, sustain, and otherwise perform simple, routine tasks, and instructions, and to no more than occasional interaction with the public, co workers, and supervisors."); *Davis v. Comm'r of Soc. Sec.*, 11 F. Supp. 3d 1154, 1167 (M.D. Fla. 2014) ("Eleventh Circuit caselaw holds that a limitation to simple, routine tasks adequately addresses a plaintiff's moderate limitations in concentration, persistence, or pace where the record shows the plaintiff could perform such tasks.") (collecting cases).

The Plaintiff's reliance in this regard on *Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005) is misplaced. In *Moore*, the court found that the ALJ had failed to complete the PRT form, comply with the required analysis, and analyze two functional areas. *Id.* at 1214. Here, however, the ALJ analyzed all functional areas and provided a detailed assessment of the evidence in his subsequent RFC analysis. As a result, I find the Plaintiff's third claim of error to be without merit.

## D.

The Plaintiff's fourth claim of error is that the ALJ erred in failing to consider her inability to work full-time. This contention, like her others, fails.

In order for an ALJ to find at step five that a claimant is not disabled, he must determine that the claimant is capable of engaging in full-time work. *Kelley v. Apfel*, 185 F.3d 1211, 1214 (11th Cir. 1999) ("[A]t Step Five, the government's present representation is that only an ability to do full-time work will permit the ALJ to render a decision of not disabled."); *Carlisle v. Barnhart*, 392 F. Supp. 2d 1287, 1290 (N.D. Ala. 2005) ("[T]he Commissioner's position in [the Eleventh Circuit is] that only an ability to do full-time work will prevent a finding of disabled at step-five" of the sequential analysis) (citing *Kelley*, 185 F.3d at 1214).  The court in *Kelley* explained that the government's position was premised on "the relevant concept at Step Five [being] the residual functional capacity to perform work on a 'regular and continuing basis.'" *Kelley*, 185 F.3d at 1214 (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996)).[8]

As discussed previously, the ALJ here found at step five that, although the Plaintiff was unable to engage in her past relevant work as an office assistant (R. 17), she was able to perform the jobs of laundry folder, photo copy scanner, and produce sorter.  (R. 17-18, 80-82).  The VE, however, testified that a person absent from work even one day a month across the year could not "sustain[ ] competitive employment." (R. 83).  Citing this testimony, the Plaintiff contends that the ALJ failed to consider her inability to work full-time.  I disagree.

I begin with the Plaintiff's assertion that the ALJ should have, but did not consider several "absences" she had during the eleven months prior to and the many

---

[8] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

months after her date-last-insured.  (R. 330, 349, 351, 367, 373, 375-376, 378, 381, 389, 392, 394-396, 398, 403, 408, 414-416, 420-421, 423, 427, 430, 432, 435-36, 443, 456, 460, 463, 468, 471, 480, 509).  Other than a three-day psychiatric stay, the balance of these absences appears to relate to medical appointments.  And, the record establishes that these absences for medical appointments occurred when the Plaintiff was not working full time.  (R. 64, 69-70, 246-248).  Thus, the Plaintiff's argument that she would not be able to work full-time amounts to little more than speculation.  *See Clay v. Berryhill*, 2018 WL 4782273, at *8 (S.D. W.Va. July 2, 2018) (observing that the plaintiff's claim that numerous regularly scheduled medical appointments would cause her to miss more than one-day of work per month was "speculative at best," especially since they occurred during a time period when "she was not working") *report and recommendation adopted*, 2018 WL 4781188 (S.D. W.Va. Oct. 3, 2018).

Even were that not the case, there is case authority that absences for medical appointments do not necessarily constitute evidence of an inability to work full-time. *See Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) (per curiam) ("The number of medical appointments [the claimant] attended is not a functional limitation caused by her impairments that would affect her physical or mental capabilities.  Moreover, nothing in the record indicates that [the claimant] was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work.").

Here, the ALJ comprehensively addressed the medical evidence of record, including the treatment and medical appointments on which the Plaintiff's argument

is based.  (R. 13-16).  As such, his analysis was sufficient.  *See Murray v. Saul*, 2019 WL 3928857, at *4 (M.D. Fla. Aug. 20, 2019) (citing SSR96-8p, 1996 WL 374184, at *5) (finding the ALJ satisfactorily considered the frequency of plaintiff's hospitalizations and medical treatment by discussing such incidents that occurred prior to the ALJ's decision); *see also Langway v. Berryhill*, 2019 WL 918958, at *9-10 (M.D. Fla. Feb. 8, 2019) (rejecting contention that frequent medical appointments ruled-out full-time employment where, among other things, the ALJ noted plaintiff's conservative treatment for physical and mental health issues), *report and recommendation adopted*, 2019 WL 913283 (M.D. Fla. Feb. 25, 2019); *Gray v. Astrue*, 2012 WL 3070913, at * 5-6 (M.D. Fla. June 4, 2012) (explaining that plaintiff's absenteeism argument was based on the faulty premise that the ALJ was required to accept plaintiff's assertion that she would need to miss several days of work a month when the ALJ had discredited the claimed severity of her impairments).

To the extent that the Plaintiff also seeks to rely on Dr. Brown's opinion to support her argument about her inability to work full time, that effort is unavailing for the reasons discussed above.

### E.

The Plaintiff's fifth and final claim of error is that the ALJ was not properly appointed under the Constitution's Appointment Clause, U.S. Const. art. II, § 2, cl. 2, and that the matter should therefore be remanded for a hearing before an ALJ who has been constitutionally appointed as provided for by the Supreme Court in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018).  This argument likewise fails.

In *Lucia*, the Supreme Court held that ALJs at the Securities and Exchange Commission were required under the Appointments Clause to be appointed by "the President, a court of law, or a head of department."  138 S. Ct. at 2051, 2055.  Noting that the ALJ in *Lucia* was not so appointed and that the petitioner had timely challenged the ALJ's appointment at the administrative level, the Supreme Court found that remedial measures were necessary.  *Id.* at 2055.  The Supreme Court accordingly held that the petitioner was entitled to a new hearing before a different constitutionally appointed ALJ.  *Id.*

In the wake of *Lucia*, both the executive branch and the courts have grappled with how to rectify administrative decisions handed down by ALJs who were not constitutionally appointed.  As the Third Circuit observed, a presidential executive order addressing the matter concluded "that 'at least some—and perhaps all—ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause.'"  *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 152 (3d Cir. 2020) (quoting Exec. Order No. 13,843, 83 Fed. Reg. 32,755 (July 13, 2018)).  As a result, the then-Acting Commissioner of Social Security "conceded the premise" and promptly reappointed the SSA's ALJs and other administrative judges under the Commissioner's own authority.  *Id.*

In *Cirko*, the Third Circuit considered the additional question of "whether SSA claimants may raise Appointments Clause challenges in federal court without having exhausted those claims before the agency."  *Id*. at 153.  After analyzing the matter, the Court concluded that SSA claimants did not have to satisfy such a requirement.  *Id.*

29

While the Eleventh Circuit has yet to weigh in on the exhaustion issue, there are at least two pending appeals before it involving that threshold question—*Perez v. Comm'r of Soc. Sec.*, No. 19-11660 (11th Cir. Apr. 29, 2019) and *Lopez v. Acting Comm'r of the Soc. Sec. Admin.*, No. 19-11747 (11th Cir. May 3, 2019). In both of these cases, unlike the Third Circuit in *Cirko*, the district courts below interpreted *Lucia* to mean that an Appointments Clause challenge is forfeited unless it is raised at the administrative level. *Perez v. Berryhill*, 2019 WL 1405642 (S.D. Fla. Mar. 28, 2019); *Lopez v. Berryhill*, 2019 WL 1429632 (S.D. Fla. Mar. 29, 2019). The majority of courts within and outside this Circuit that have considered the matter have reached a similar conclusion. *Jones v. Berryhill*, 2019 WL 2583157, at *7 & nn.8 & 9 (N.D. Fla. June 21, 2019) (noting that "'vast majority of courts that have considered" Appointments Clause challenges "in the context of social security disability proceedings" have concluded that such challenges are "forfeited if not raised in the administrative proceedings") (collecting cases); *see also Huebert v. Comm'r of Soc. Sec.*, 2019 WL 5206065, at *5 (M.D. Fla. Oct. 16, 2019) (expressing skepticism "that *Lucia* is even controlling as to [SSA] ALJs") (quoting *Miaolino v. Comm'r of Soc. Sec*, 2019 WL 2724020, at *7 (M.D. Fla. July 1, 2019)); *Ramazetti v. Comm'r of Soc. Sec.*, 2020 WL 428950, at *8 (M.D. Fla. Jan. 28, 2020) (agreeing with *Miaolino*); *Vanhorn v. Comm'r of Soc. Sec.*, 2020 WL 998724, at *10-11 (M.D. Fla. Mar. 2, 2020).

In this case, the Plaintiff has not demonstrated that she challenged the ALJ's appointment at the administrative level. And, although she cites *Cirko* and other Third Circuit authority for the proposition that exhaustion is not required in this context, she

fails to address or even acknowledge that the majority of courts in this District and elsewhere have ruled to the contrary.  Given the persuasive authority in this District, I find her fifth claim of error to be without merit.

IV.

For the foregoing reasons, I recommend:

1.      The Commissioner's decision be affirmed.

2.      The Clerk of Court be directed to enter Judgment in the Defendant's favor and to close the case.

Respectfully submitted this 1st day of August 2020.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable James S. Moody, Jr., United States District Judge
Counsel of record